MARTHA J. THOMPSON, V. J. N. JOHNSON ET AL.

No. 7216.

1. **Deputy Clerk — Special.** — The certificate of a deputy clerk taking an acknowledgment was signed by him as "special deputy." It being regular in all other respects, the word *special* was surplusage. The law defines the duties of a deputy clerk.

2. **Privy Acknowledgment — Comparison of Statutes.** — The form of certificate of a married woman's acknowledgment as prescribed in the Act of 1846 is similar to that prescribed in the Revised Statutes, article 4313. It was required that the certificate should show that she acknowledged the instrument to be "her act and deed," and that she had "willingly signed, sealed, and delivered the same, and that she wished not to retract it." Where the certificate of the officer omitted to state that she acknowledged the instrument to be "her act and deed," but showed that she had "willingly signed it and wished not to retract it," it was held to be sufficient.

3. **District Clerk.** — In 1872 the district clerk and his deputies could take acknowledgments to deeds for record.

4. **Case in Judgment — Deputy Clerk.** — May 18, 1872, a district clerk appointed a *special* deputy to take the acknowledgment of a man and wife to a deed to one Miller. In August, 1872, the district clerk requested the deputy to take the acknowledgment of the same vendors to another vendee, assuring the deputy that he would fix up the proper appointment, etc. The deputy took the acknowledgment. No other deputation was made. *Held*, that the deputy was certainly a de facto officer, if not an officer de jure.

APPEAL from Grayson. Tried below before Hon. H. O. HEAD. No statement is necessary.

*G. W. Randell* and *Wilkens & Hazlewood*, for appellant.—Section 559 of our Revised Statutes provides, that the deed of a married woman to her separate property shall not take effect till acknowledged before some officer authorized by law to take the same. We presume it will not be contended that Hopson, who attempted to take the acknowledgment to the deed in question in this case, was either a de jure or de facto officer.

Mr. Devlin, in his work on Deeds, section 472, says: "An acknowledgment before a person who describes himself in his certificate as a clerk pro tempore of a court is sufficient, if the person taking the acknowledgment is clerk de facto." Hopson subscribed himself "special deputy." Was he deputy clerk de facto? Section 1103 of our Revised Statutes provides, that the clerk of the District Court shall have power to appoint one or more deputies "by a written appointment under his hand and seal." It will not be contended that the clerk would have this power but for the statute. The language of the statute is so worded as to leave no doubt as to how the clerk can confer upon another the authority of this most important officer. The same section of the statute says, "the appointment shall be filed in the office of the clerk of the

County Court, and shall be by him recorded." The language of this statute shows its mandatory character. "Shall" be appointed in writing, "shall" be filed in the office of the county clerk, and "shall" be by him recorded. Section 1104 provides, that such deputy "shall" take the oath of office prescribed by the Constitution. This court said in the case of Wert v. Schneider & Davis, 64 Texas, 329, that whether the deputy clerk's appointment had been recorded or not was a matter of extraneous proof, and not ground for declaring the instrument upon its face void. Hopson described himself as a "special deputy." Prima facie he had no authority under our law to take an acknowledgment to the deed of any one, and particularly a married woman. Our law knows no such an officer as special deputy to take the acknowledgment of a deed. This fact was apparent on the face of the certificate, and put every one upon notice, and required of them to look into this "special deputyship." In Sample v. Irwin, 45 Texas, 567, the word "agent" authorized an inquiry into the power and authority of the officer who made the certificate to the deed in question. We do not contend that in a written appointment words restricting the power of a deputy might not be treated as surplusage when the language of the appointment was sufficient to make said appointment otherwise regular. What we do contend is, that Hopson did not describe himself in his certificate as an officer authorized to do the act he assumed to perform. This put every person upon inquiry as to his actual authority to act in the premises. Then, would an inquiry develop the fact that he had such authority? Let the record answer this question. The court finds, that the district clerk verbally authorized Hopson to take this acknowledgment, saying he would afterward fix up the papers. We do not believe this appointment would have been valid even if the district clerk had afterward put the whole matter in writing as required by statute; and not having done so, we think puts the invalidity of Hopson's act beyond question.

The court finds that Hopson never acted as a deputy clerk in Grayson County but twice in his life. He took an acknowledgment to one single deed. Whatever authority he had to do this was spread of record. This record showed the extent of his authority if it showed anything. His authority was restricted to the one act. But we contend that the appointment in no respect complied with the statute. Does this one act alone make Hopson an officer de facto? Murphree, in his work on Sheriffs, section 1140, says: "The most time-honored and best known definition of a de facto officer is that given by Lord Ellenborough: 'one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.'" Again, the same authority, section 1142, says: "It is not true that an officer de jure or de facto, assuming to discharge the duties which by law appertain to another, be-

comes thereby that officer de facto, and his acts so done become valid by reason of his assumed official character. The rule in such case is, that to support the acts of a person on the ground that he is a de facto officer, such acts must be done under color of the office which he held or assumed to hold." And further, in the same section, the author says: "It is essential to constitute a person an officer de facto that he must be in possession of the office, and in the exercise of its functions and discharge of its duties." And more, "he must be the sole incumbent of the office." We therefore think it beyond question that Hopson was neither a de jure nor a de facto officer; and that his want of authority to take the acknowledgment being apparent in his certificate, leaves quite as little question that his want of authority in fact may be shown by extraneous proof, as was done in this case. Rev. Stats., arts. 559, 1103, 1104, 4310; Wert v. Schneider & Davis, 64 Texas, 327; Coffey v. Hendricks, 66 Texas, 676; Sample v. Irwin, 45 Texas, 567; Brown v. Moore, 38 Texas, 645; Morton v. Lowell, 56 Texas, 643, 647; Murphree on Sheriffs, secs. 1140, 1142; Dev. on Deeds, sec. 472.

*Maughs & Peck* and *J. W. Finley*, for appellees.—When the clerk appointed Hopson deputy, he became a deputy for all purposes; and when the clerk put the seal to the certificate and recorded the deed, he thereby ratified and validated Hopson's act done as deputy. Rev. Stats., arts. 1103, 1104; Crocker on Sheriffs, sec. 13; 1 Dev. on Deeds, 471–475, and notes; Murphree on Sheriffs, secs. 16, 18, 78, 1141, 1144; Albrecht v. Long, 27 Minn., 81; Cavit v. Archer, 52 Texas, 169; 5 Am. and Eng. Encyc. of Law, 627; Norton v. Simmes, Hobart, 13; Wilford v. Miller, 1 Morr. (Iowa), 405.

COLLARD, JUDGE, *Section A.*—Suit in trespass to try title, by appellant Martha J. Thompson against appellees, for 37½ acres of land in the Caruthers survey, in Grayson County. Defendants pleaded not guilty. The case was tried by the court, and judgment rendered upon his findings of fact and law for defendants, to which Mrs. Thompson, the plaintiff, excepted and gave notice of appeal. There is no statement of facts.

The court's findings are as follows:

"The land was the separate estate of Martha J. Thompson. Her husband J. G. Thompson died in 1879. August 3, 1872, plaintiff, joined by her husband James G. Thompson, executed a deed for the land in controversy in this suit to W. W. Purinton; that said deed was acknowledged before J. P. Hopson by plaintiff and her said husband; that on May 18, 1872, the clerk of the District Court of Grayson County, Texas, appointed said J. P. Hopson in the manner and for the purpose shown by the following paper:

" ' *The State of Texas, County of Grayson.*—Know all men by these presents, that I, S. Bostick, clerk of the District Court of Grayson County, Texas, do hereby nominate, constitute, and appoint J. P. Hopson my special deputy to take the acknowledgments of James G. and Martha J. Thompson to a deed made from them, the said James G. Thompson and Martha J. Thompson, his wife, to John K. Miller, and that his acts in so doing are entitled to full faith and credit.

" ' Witness my hand and official seal, this the 18th day of May, A. D. 1872.

[Seal]  " ' S. BOSTICK, Clerk.'

" ' I, J. P. Hopson, do solemnly swear, that I will faithfully and impartially discharge the duties incumbent upon me as a special deputy district clerk of Grayson County, Texas, to the best of my skill and ability, and that I will support the Constitution and laws of the United States and of this State; and I further swear, that since the adoption of the Constitution of the State of Texas, I, being a citizen of this State, have not fought a duel with deadly weapons, or acted as second in fighting a duel, or knowingly aided any one thus offending; that I am not disqualified from holding office under the Fourteenth amendment to the Constitution of the United States; and further, I am a qualified elector of this State.  " ' J. P. HOPSON.'

" ' Sworn to and subscribed before me, this May 18, 1872.

" ' S. BOSTICK, Clerk.'

" ' Filed for record May 20, 1872.  " ' S. BOSTICK, Clerk.'

"That said appointment and oath were recorded in the office of said district clerk; but no bond was given by said Hopson; that before said Hopson took the acknowledgment of plaintiff and her husband to their deed to said W. W. Purinton, said district clerk verbally authorized said Hopson to take said acknowledgment, saying to said Hopson, that he would fix up the papers authorizing him to take said acknowledgment when he returned, which was never done; that said Hopson went to the house of plaintiff and her husband in the country to take said acknowledgment, accompanied by said Purinton; that said Hopson took said acknowledgment, and after doing so and attaching his certificate, delivered said deed to said Purinton, without having attached the required seal, but said seal was afterward attached by said district clerk in his office in the presence of and with the consent of said Hopson; that the certificate of acknowledgment to said deed made by said Hopson was as follows:

" ' *The State of Texas, County of Grayson.*—Before me, S. Bostick, clerk of the District Court of Grayson County, personally came J. G. and Martha J. Thompson, to me well known, and acknowledged that

they signed and delivered the foregoing deed for the consideration and purposes therein stated; and the said Martha J. Thompson, wife of said J. G. Thompson, being by me examined, separate and apart from her said husband, and having the contents of said deed by me fully explained, she declared that she had signed the same of her own free will and accord, and wished not to retract her said act.

"'Given under my hand and official seal, on this the 3d day of August, A. D. 1872.

[Seal]                                   "'S. BOSTICK, Clerk.
                              "'By J. P. HOPSON, Special Deputy.

"'Filed for record August 5, 1872, at 5 o'clock p. m. Recorded August 6, 1872, at 8 o'clock, a. m.        "'S. BOSTICK, Clerk.
                                   "'By E. C. FRY, Deputy.'

"When Hopson handed said deed to Purinton, it was with the understanding that it was to be carried to the clerk to have the seal impressed thereon.

"That said Hopson never acted as deputy district clerk except to take the acknowledgment of the deed mentioned in the above written instrument and the deed of plaintiff and her husband to said W. W. Purinton, and the above oath was made before the said district clerk, and no other appointment of said Hopson than that above set forth was ever made by said district clerk.

"That the W. R. Caruthers survey was the community property of said W. R. Caruthers and plaintiff, and that by the verbal partition of said tract of land plaintiff became the sole owner of the east half of same, embracing the land in suit.

"That the deed from plaintiff and her husband James G. Thompson to W. W. Purinton was duly and legally acknowledged and certified, and that said deed passed the title to the land in controversy to said W. W. Purinton.

"That judgment should be rendered against plaintiff, and in favor of the defendants J. M. Cook, J. A. Gilmore, The Denison Investment Company, J. B. McDougal, John Stockbridge, E. Perry, J. T. Munson, A. R. Collins, P. O'Donnell, J. N. Johnson, and R. H. Cohn, which is so ordered."

There is but one question presented in the assignments of error: Did the deed so acknowledged by Mrs. Thompson, she being a married woman, convey her title to her separate right to the land?

The certificate of the officer being signed as "special deputy" would not invalidate it. It being regular in all other respects, the words special deputy would be surplusage. It is objected to the certificate, that it does not show that Mrs. Thompson acknowledged that the instrument was her "act and deed." The form of certificate of a married woman's acknowledgment as prescribed in the Act of 1846 is similar to that pre-

scribed in our present statute. Sayles' Civ. Stats., art. 4313. It was required, that the certificate should show that she acknowledged the instrument to be "her act and deed," and that she had "willingly signed, sealed, and delivered the same, and that she wished not to retract it." Where the certificate of the officer omitted to state that she acknowledged the instrument to be "her act and deed," but showed that she had willingly *signed* it, and wished not to retract it, it was held to be sufficient. Belcher v. Weaver, 46 Texas, 294; Solyer v. Romanet, 52 Texas, 567; Coombes v. Thomas, 57 Texas, 321. This point must be decided against the appellant. Rev. Stats., art. 4310.

It is contended, that the person before whom the acknowledgment of Mrs. Thompson was taken was not in fact or in law authorized to do so.

The district clerk Bostick had authority to take acknowledgments to deeds for record. Rev. Stats., art. 4305. His deputies would have the same power. His appointment of a deputy is required to be by writing (Rev. Stats., art. 1103), and such deputy is required to take the oath of office. Rev. Stats., art. 1104. These statutes were complied with in this case. But it is contended by appellant, that the appointment was to perform a particular act—to take the acknowledgments of James G. and Martha J. Thompson, his wife, to their deed to John K. Miller; and that the appointment expired when these acknowledgments were taken. It seems that this can not be the correct doctrine. The law makes no provision for the appointment of a special deputy district clerk, but for a deputy or deputies; and when an appointment is made by the clerk he can not restrict the authority to one act, but it is good for all purposes. Albrecht v. Long, 27 Minn., 83.

From the foregoing considerations, we are unwilling to say that Hopson was not a de jure deputy clerk, in which case the acknowledgment of Mrs. Thompson was taken in all respects as required by law. But if he was not such deputy, it must be held that he was a de facto deputy—that is, clothed with color of authority and empowered to act in the premises between the parties, though possibly not in his own right. This would be true, whether he is regarded as holding over under his first appointment or as exercising the functions of the office under the last verbal appointment. Under the verbal appointment alone he was a de facto officer. The fact that he did not qualify would not control the question. Sharp v. Thompson, 100 Ill., 447; Coles County v. Allison, 23 Ill., 437; Soudant v. Wadhams, 46 Conn., 218. He was appointed by the power legally authorized to appoint; irregularly, it is true—that is, not in writing; but he assumed the possession of the office, and by virtue thereof performed the act in question. He was a de facto officer. The case of Sharp v. Thompson, supra, is like the one at bar, except that in that case the deputy was acting as such

and had taken other acknowledgments.    In this case, the deputy was told that the papers would be fixed up giving him a formal appointment when he returned.    This was not done, but the direction and promise had the effect to put the functions of the office in possession of the deputy, so that his acts thereunder would be valid as to third persons.    "An acknowledgment by an officer de facto is good if it would be so if he were an officer de jure."    Woodruff v. McHenry, 56 Ill., 218.    For other authorities upon this subject, see "De Facto Officers," in 5 American and English Encyclopædia of Law, and especially the case of The State v. Carroll, a Connecticut case, there given in full.

We are of opinion that Hopson was acting un    color of authority in taking the acknowledgment, and was therefore a de facto officer authorized to take the acknowledgment.    All the parties recognized him as such.    He had taken Mrs. Thompson's acknowledgment before, under a valid appointment, and she doubtless thought he was a legal officer before whom she could acknowledge the deed, and one who would give her all the protection the law afforded.    The acknowledgment being valid, it follows that she had no title to the land in dispute, and therefore could not maintain this suit.

The judgment of the court below ought to be affirmed.

*Affirmed.*

Adopted May 10, 1892.